Nathan It. Sober, S.
A distributee has filed with the administrator a renunciation of his intestate share. As an incident to his account, the administrator requests of the court advice and direction as to the manner of distributing the renounced share among other distributees. The question submitted to the court has been discussed at Surrogates’ conferences and as well by our law assistants. There is wide disagreement. While the precise issue is not one which recurs with any frequency, collateral issues do. And, since the statute permitting renunciation of an intestate share is relatively new, these other issues are also discussed.
A brief history is relevant.
Until recently no statutes governed renunciations of either testamentary dispositions or intestate shares. However, prior to any statute, a legatee or devisee could always renounce his testamentary disposition. A distributee could not. The theory was that a testamentary disposition was regarded as an ‘ ‘ offer ’ ’ by the testator which the legatee or divisee could accept or reject. A distributive share in intestacy on the other hand vested by force of law in the distributee at date of death. An attempt by the distributee to relieve himself of his vested share or to shift it to others occasioned possible gift tax consequences : and, the vested share remained subject to the claims of the renouncing distributee’s creditors. (Matter of Ramsdill, 190 N. Y. 492; Albany Hosp. v. Albany Guardian Soc., 214 *234 N. Y. 435; Matter of Aievoli, 272 App. Div. 544; Matter of Wolfe, 89 App. Div. 349, affd. 179 N. Y. 599.) In contrast, because a testamentary disposition was an “ offer ” whichJ the legatee or divisee could accept or reject, a renunciation of a testamentary disposition had no gift or creditor consequences (Oliver v. Wells, 254 N. Y. 451). A statute was therefore necessary to permit a distributee to renounce in order to overcome the vesting hurdle.
After study, first by the Law Revision Commission (1950 Report of N. Y. Law Rev. Comm., pp. 239-258) and later by the Bennett Commission on Estates (3d report [1964], pp. 234-264) a statute was enacted permitting for the first time in this State a renunciation of an intestate share. (Decedent Estate Law, § 87-a, eff. June 1, 1965, now EPTL 4-1.3.) That statute with minor modification was patterned after a 1950 proposal by the Law Revision Commission. It was not how-ever until 1971 that a statute codified the prior decisional law governing the renunciation of a testamentary disposition. (EPTL 3-3.10, eff. Nov. 5, 1971.) Thus, while the “ intestate ” renunciation statute was the earlier enacted, renunciation of testamentary dispositions had been permitted by the decisions for many years without the necessity fo.r statutory authorization.
Another preliminary observation is helpful. Renunciation of both, testamentary dispositions and intestate shares can be an important feature in post-mortem estate planning.' (Wright, Availability of Renunciations for Post-Mortem Estate Planning in New York, 34 Albany L. Rev. 642.) Tax-motivated renunciations may result in an increased share to a surviving spouse and in consequence substantial tax savings in the immediate estate. However, those renunciations of testamentary dispositions most frequently encountered are purposed to pass the share of the legatee or devisee to his own issue, thus effecting tax benefits ultimately in that beneficiary’s own estate. A legatee by renouncing could take advantage of the commonplace alternative disposition in the will to his issue. And, at least since the effective date of the testamentary share renunciation statute (EPTL 3-3.10) a legatee can probably pass his disposition to his issue by operation of law a& well under the “ anti-lapse ” statute (EPTL 3-3.3; Matter of Cooper, 73 Misc 2d 904) or under the “ residue of a residue ” statute (EPTL 3-3.4). Thus, an elderly legatee having a substantial estate of his own could, by renouncing, pass the disposition directly from the testator to his own issue without having the legacy taxed in his own estate.
*235 However, without some statutory provision, a renouncing distributee could not pass his distributive share to his issue; for while the renouncing ancestor is living, his issue are not distributees of the decedent. The new statute therefore “ created ” (see EPTL 4-1.3, subd. [a]) distributees of the issue by providing that a renunciation by the ancestor shall have the same effect as though he had predeceased the decedent. In short, the new intestate renunciation statute was purposed to permit distributees of an intestate estate (as the decisions then permitted a legatee or devisee of a testamentary estate), by renouncing, to pass the intestate share to those who would take if the renouncing distributee had predeceased the intestate. Most often this would be his own issue.
We discuss the facts of this case.
When our decedent died intestate he was survived, as his distributees, by (a) one living brother Joseph (having no issue), (b) two issue of a predeceased brother Domenico, and (c) six issue of a predeased brother Michael. Since under the descent and distribution statute (EPTL 4-1.1) the distri butees were of unequal degrees of kinship from decedent, distribution was required to be per stirpes — one third to Joseph, one third shared equally by the two issue of Domenico (%th each), and one third shared equally by the six issue of Michael (l/18th each).
It should be observed that distribution at date of death was required to be per stirpes because one distributee, brother Joseph, was of a different degree of kinship than the eight nieces and nephews (EPTL 4-1.1, subd. [a], par. [7]).
Joseph, under the new statute, renounced his intestate share. He left no issue to take that share. The renounced share must under the statute be redistributed to the remaining distributees of the decedent.
The disagreement is whether the renounced share must be distributed per stirpes as was the original estate as of the date of death; or whether his “presumed” death requires a per capita distribution of his renounced share as would be the case if he had in fact predeceased the decedent (EPTL 4-1.1, subd. [b]).
There are as yet no decisions governing the distribution of a renounced share under the new ‘ ‘ intestate ’ ’ renunciation statute. The reports of the Law Revision Commission and the Bennett Commission shed little or no light on the question. The statute itself is not enlightening and in some respects ambiguous. Although the particular issue in this case is one *236 which is not likely to recur with any frequency, there are other issues which will arise under the new statute. All are discussed.
EPTL L-1.3 (subd. [c]) is the provision governing the effect of a renunciation: ‘1 The filing of a renunciation, as provided in this section, has the same effect with respect to the renounced share as though the renouncing person had predeceased the decedent. Such renunciation is retrocative to the date of decedent’s death, but it affects only the distribution of the renounced share and shall not decrease the share of any other distributee. ’ ’
The statute gives no express direction with respect to the descent and distribution of the renounced share. Nor does the commission report discuss that problem.
It is probable that the first sentence was purposed to overcome the vesting hurdle and prevent gift tax and creditor consequences, viz., “ as though the renouncing person had predeceased the decedent ’ ’. Most of the Bennett Commission study is devoted to the vesting hurdle. If the provision is also purposed to give direction for the descent and distribution of the renounced share, it is strange that neither the Bennett Commission nor the Law Revision Commission reports mention that purpose.
The provision that the renunciation ‘ ‘ is retroactive to the date of decedent’s death” was necessary since other provisions of the statute permit filing not later than six months after letters.
The second sentence, does give some direction. Only the renounced share- — -not the entire estate — is to be distributed. Since, as previously discussed, the shares of the other distributees had vested by force of law on death, these shares could not, of course, be redistributed.
The direction that the renunciation “ shall not decrease the share of any other distributee ” seems superfluous. If only the renounced share is to be distributed there are simply no circumstances where any of the vested shares could possibly be reduced. The Law Revision Commission draft (1950 Report of N. Y. Law Rev. Comm., p. 241) contained no such provision.
Obviously, since the statute permits renunciation, it contemplates that the renounced share will be distributed among the other distributees — presumably under the descent and distribution statute. It should be read therefore as directing that the renounced share should descend and be distributed under EPTL 4-1.1 “ as though the renouncing person had predeceased the decedent.”
*237 A renounced share would in such case he distributed as follows:
(1) If a renouncing distributee has issue, his entire renounced share would descend to his own issue. No other distributee would share. This would also be the result under section 4-1.1, if by reason of the renunciation the renouncing distributee had predeceased the decedent. However, where there are uncles and aunts (more than one) who are the distributees, their issue would not take: the remaining uncles or aunts would take the renounced share (EPTL 4r-1.1, subd. [c]).
(2) If a, renouncing distributee has no issue, his entire renounced share would “descend” (a) among the members of his own ‘ ‘ stock ’ ’ if distribution was required to be per stirpes and members of the other “ stocks ” would not share; (b) among all the distributees if distribution was required to be per capita. This would also be the result under section 4-1.1 if the renouncing distributee had predeceased the decedent.
(3) If a renouncing distributee without issue is one of several children of decedent, his renounced share would “descend” to the other children, and a surviving spouse, if any, would not share; if such renouncing child is one of two children, the renounced share would be shared equally between the other child and the spouse (EPTL 4-1.1, subd. [a], pars. [1], [2]); if he is the only child then the renounced share would “ descend ” to the surviving spouse and parent of decedent if any. (EPTL 4-1.1, subd. [a], pars. [3], [4], [5].) Again the result would be the same as if the renouncing distributee had predeceased the decedent.
From these examples, it is evident that in most cases the descent and distribution of the renounced share will follow section 4 — 1.1. There is little disagreement with the results in these examples.
The disagreement concerns the consequences of following 4 — 1.3 literally when to do so changes the manner of distribution from per stirpes to per capita. This case illustrates the problem.
At date of death in this estate distribution was required to be per stirpes since the distributees were of unequal degrees of kinship from decedent. When Joseph, who was the single distributee of ‘ ‘ closer ’ ’ degree renounced, the remaining distributees were then of the same degree of kinship to decedent.
The statute provides that the renounced share shall be distributed “ as though the renouncing person had predeceased the decedent.” Bead literally, this seems to require per capita *238 distribution. However, to do so would in many cases defeat the purpose of the renunciation statute.
This court, in disagreement with some of my colleagues and law assistants, construes the statute as applying only to the ‘ ‘ descent ’ ’ of the renounced share and not the manner of its distribution. For the purpose of determining to whom the renounced share shall descend, the renouncing distributee is presumed (“as though”) to have predeceased the decedent. For the purpose of determining the manner of distribution, per stirpes or per capita, the statute is silent: distribution of the renounced share, like the original shares, must be made as though the renouncing distributee is living. To conclude otherwise would, in too many cases defeat the stated purpose of the commission to permit a renouncing distributee to pass his entire renounced share to his own issue. An example illustrates this problem.
Professor Samuel Hoffman, a staff member of the commission, in his Practice Commentary to section 4-1.3 (McKinney’s Cons. Laws of N. Y., Book 17B, EPTL 4-1.3, p. 543) gives the example of a decedent survived by brother A and a niece (issue of predeceased brother B). Brother A renounces. He has two sons. Professor Hoffman concludes that the renounced share descends to the two sons. The niece does not share at all.
Professor Hoffman’s example is like the instant case. Before brother A renounced distribution was required to be per stirpes. After he renounced, all the distributees, his town sons and the niece were of equal degrees of kinship to decedent. If the renunciation statute is construed literally — as though A had predeceased the decedent, the manner of distribution would be per capita. Instead of the two sons receiving A’s entire renounced share, it would be distributed equally among all three remaining distributees. If the predeceased brother B had eight instead of one issue, the two sons of A would receive one tenth each and the remaining distributees would share eight tenths.
Professor Hoffman by construing the statute to give the issue of A his entire renounced share agrees with the construction given by this court. The literal construction which some of our Surrogates believe is required would prevent a renouncing distributee in many cases from passing his entire renounced share to his own issue. This would frustrate the clearly expressed -tax motivation of the new renunciation statute.
*239 It is difficult to conclude that the commission considered this problem at all. However, since the statute is ambiguous, a construction favorable to the general purpose of the sponsors is justified.
In the instant case, the renouncing distributee Joseph had no issue and presumably no tax motivation in renouncing. Nevertheless the principle is the same and must be consistently applied. If the manner of distribution (per stirpes or per capita) is not changed by the renunciation of brother A in Professor Hoffman’s example, it is not changed by the renunciation of brother Joseph in the instant case.
In the absence of any express or implied direction to the contrary in A-1.3, since Joseph had not in fact predeceased the decedent, his renounced share must be distributed as directed in 4 — 1.1 per stirpes among the two remaining “stock.” To effectuate that direction, there shall be added to each of the vested shares of the two issue of Domenico one twelfth of the net estate; to the vested shares of the six issue of Michael one thirty-sixth of the net estate.
As so providing, the account is settled and the conformed decree signed.