Raymond J. WELDER, Jr., et al., Appellants,

v.

Sarah Harris HITCHCOCK, et al., Appellees.

No. 1729.

Court of Civil Appeals of Texas, Corpus Christi.

May 7, 1981.

Rehearing Denied May 28, 1981.

Allen Wood, Wood & Burney, Corpus Christi, Wm. G. Burnett, Sinton, for appellants.

John R. West, West & Benedict, Beeville, M. W. Meredith, Jr., Meredith, Donnell & Edmonds, Corpus Christi, Robert D. Nogueira, Beeville, Michael Kendrick, Jr., Head, Kendrick & Head, Corpus Christi, for appellees.

OPINION

NYE, Chief Justice.

The sole issue in this case is the effect of a renunciation of an intestate share under Section 37A of the Texas Probate Code on the manner of descent and distribution.

This is an appeal from an order of the trial court determining the manner of distribution of the estate of Tom F. Welder. All parties to this appeal are either nieces or nephews of the decedent, with the exception of Amos Welder, Sr., who is decedent's brother. The trial court ordered the estate to be distributed in a "per stirpes" manner in accordance with Section 43 of the Texas Probate Code.

On January 23, 1977, Tom F. Welder died intestate. Decedent left no spouse, children, or parents surviving his death. He had three brothers, Amos G. Welder, Sr., Henry T. Welder, and Raymond J. Welder, Sr. Only Amos G. Welder, Sr., survived his brother. About seventy-four days after the death of Tom Welder, Amos G. Welder, Sr., renounced his inheritance from his brother, following the form allowed by the Texas Probate Code, Section 37A (1980). The record shows that the following was the decedent's family for inheritance purposes:

Thos. Welder
(father; deceased) — Alice Welder
(mother; deceased)

descendants

| Amos G. Welder, Sr. (brother; living) | Tom F. Welder, Jr. (decedent) | Henry T. Welder (brother; deceased) | Raymond J. Welder, Sr. (brother; deceased) |
|---|---|---|---|
| descendants | no descendants | descendant | descendants |
|  | no wife |  |  |
| Amos G. Welder, Jr. (nephew; living) |  | Elizabeth W. Harris (niece; living) | Josephine Miller (niece; living) |
| Martha W. McMillan (niece; living) |  |  | Mary Elizabeth Knight (niece; living) |
|  |  |  | Louise Hall (niece; living) |
|  |  |  | Raymond J. Welder, Jr. (nephew; living) |

The probate of Tom F. Welder's estate was filed in County Court of Bee County, Texas. Upon proper motions of the parties, the case was transferred to District Court in the same county. On October 30, 1979, Martha Welder McMillan, one of the parties, filed a motion to sever the cause of action for descent and distribution from a cause of action for partition raised earlier upon the application of Elizabeth Welder Harris. An order to sever was granted by the trial court. This suit for descent and distribution then constituted a separate suit in the District Court.

Motions for summary judgment were filed by all parties in the new suit. After a review of the pleadings and discovery of the parties, the trial court granted the motions for summary judgment of Amos Welder, Sr., Amos Welder, Jr., Martha Welder McMillan and Elizabeth Welder Harris. The motions of the remaining parties of interest were denied. The estate of Tom F. Welder was ordered to descend and be distributed, in a "per stirpes" manner, as follows:

1. The heir of Henry T. Welder:
   Elizabeth Welder Harris — one-third (⅓)

2. The heirs of Amos Welder, Sr.
   | Amos Welder, Jr. | one-sixth (⅙) |
   | Martha Welder McMillan | one-sixth (⅙) |

3. The heirs of Raymond J. Welder, Sr.
   | Raymond J. Welder, Jr. | one-twelfth (1/12) |
   | Louise Welder, Hall | one-twelfth (1/12) |
   | Mary Elizabeth Welder Knight | one-twelfth (1/12) |
   | Josephine Welder Miller | one-twelfth (1/12) |

The descendents of Raymond Welder, Sr., will be referred to as appellants. The descendents of Amos Welder, Sr., and Henry Welder will be referred to as appellees.

Appellants complain in this appeal of the manner in which the trial court distributed the estate of Tom Welder. Appellants admit that if Tom Welder had simply died intestate, leaving one brother living and five nieces and nephews by his two predeceased brothers, then the estate would be distributed in a per stirpes fashion, that is, precisely as the trial court determined the distribution. See Probate Code, Section 43 (1980). Appellants insist, however, that the act of renunciation of the interest in the inheritance of Amos Welder, Sr., on April 17, 1977, changed the order of distribution. Accordingly, once the Section 37A disclaimer was executed, the law created a legal fiction .... "that Amos Welder, Sr., had predeceased his brother, Tom Welder." This being so, the appellants claim that this

leaves seven nieces and nephews of the decedent in an equal line of inheritance. The inheritance, being to relatives of the same degree of collateral consanguinity to the testator, requires a distribution of the property in a per capita manner. On that basis appellants claim the property should be distributed in one-seventh equal shares to each of the heirs.

Since this legal issue not only involves the effect of a disclaimer of inheritance under Section 37A of the Probate Code, but also affects the laws regarding descent and distribution in this State, we briefly explore the historical background that brings us to this legal point.

The order of descent and distribution of property on the death of one dying intestate has not been passed into our case law by the common law. Instead, all such rules of order have been created by the Legislature to ensure an orderly transmission of property upon death. The Legislature has provided that when relatives of the same degree of kinship survive one dying intestate, then the property in intestacy shall be distributed on a per capita basis. Section 43 Probate Code (1980). This per capita distribution divides the property equally unto each of the heirs of the decedent. The Legislature has also provided that if the living heirs stand in an unequal degree of relationship to the common ancestor, such as a brother and two nephews, then the property in intestacy shall be distributed on a per stirpes basis. This means that the persons of a lesser degree of relationship "shall inherit only such portion of said property as the parent through whom they inherit would be entitled if alive." Section 43, Probate Code (1980). These rules of descent and distribution may not always be fair and just, but they do ensure a sense of order in which persons may plan and arrange their affairs and attorneys can accurately advise their clients.

■ While the order of descent and distribution is determined specifically by the Legislature, several rules of common law have been adopted by this State to facilitate the transmission of intestate property.

One such rule is that title to an estate vests in the heirs immediately upon the death of the decedent. There is never a time when title is not vested in someone. *Zahn v. National Bank of Commerce of Dallas*, 328 S.W.2d 783 (Tex.Civ.App.—Dallas 1959, writ ref'd n. r. e.). This rule of common law has been enacted into the Probate Code. Section 37, Tex. Probate Code (1980). The vesting of title in the heirs upon death of the decedent is said to be legally occurring within an infinitely small period of time. It has been said that there is no shorter interval of time than between the death of a decedent and the vesting of his estate in his heirs.

Upon these statutory and common laws was superimposed the disclaimer statute of Section 37A. Prior to the enactment of Section 37A in 1971, the right of a person named as a devisee or legatee in a will to disclaim a bequest was recognized in Texas. *First City Nat. Bank of Houston v. Toombs*, 431 S.W.2d 404 (Tex.Civ.App.—San Antonio 1968, writ ref'd n. r. e.). A split of authority existed, however, with regard to whether an heir or distributee could disclaim at all in the case of intestacy. Atkinson, Wills (2d Ed. 1953) p. 776. The theory was that a bequest under a will was regarded as an "offer" which a devisee or legatee could accept or reject. On the other hand, an intestate share vested immediately by force of law in the heir at the time of death and could not be divested.

The gift and estate tax consequences of the case authority in Texas on disclaimer were uncertain. Before Section 37A was enacted, the effect of disclaimer on gift and estate taxes depended upon the validity of such disclaimer under state law. If state law gave an heir the complete and unqualified right to disclaim (refusing to accept ownership of property received from a decedent), such disclaimer did not constitute the making of a gift for tax purposes. This was so, if the disclaimer or refusal was made within a reasonable time after death. Treas.Reg. § 25.2511–1(c). Under such circumstances, the person disclaiming was deemed never to have owned the property

(for tax purposes) and no taxable transaction resulted from the disclaimer. *Brown v. Routzahn*, 63 F.2d 914 (6th Cir. 1933).

Recognizing that the disclaimer law in Texas was unclear, the Legislature enacted Section 37A in 1971. The purpose of this statute was "to provide the means whereby any person who may be entitled to receive property under any will of or any inheritance from a decedent may disclaim and renounce such property; ..." 1971 Tex. Gen.Laws, ch. 979 § 1 at 2954. The statute as enacted, and as applicable to the facts of this case, provided in part:

> "Any person who may be entitled to receive any property under any will of or by inheritance from a decedent and who intends to effect disclaimer irrevocably of the whole or any part of such property shall evidence same as herein provided. A disclaimer evidenced as provided herein, shall be effective as of the death of decedent and *the property subject thereof shall pass as if the person disclaiming had predeceased the decedent* unless decedent's will provides otherwise. Failure to comply with the provisions hereof shall render such disclaimer ineffective except as an assignment of such property to those who would have received same had the person attempting the disclaimer died prior to the decedent. The term 'property' as used in this section shall include all legal and equitable interests, powers, and property, whether present or future, whether vested or contingent, and whether beneficial or burdensome, in whole or in part." (Emphasis added.) *Id.*

■ The appellants have seized upon the language emphasized above and argue that this creates the legal fiction ("as if the person disclaiming had predeceased the decedent") requiring a different distribution. This legal fiction in the case at bar, they contend, requires this Court to look at the heirs of Tom Welder, Jr., as if they are all in the same relation to a common ancestor. They contend that since the disclaimant, Amos Welder, Sr., does not exist for purposes of descent and distribution, in accordance with Section 43 of the Probate Code, the intestate property must be divided equally among Tom F. Welder, Jr.'s heirs.

Appellants' contention requires two assumptions be taken by this Court. We are unwilling to assume either. First, it must be assumed that the Legislature intended to alter partially the order of descent and distribution set out in Section 43 by the enactment of the disclaimer statute. The Legislature had previously set the order of distribution on a per stirpes basis when the heirs surviving decedent were in an unequal degree of relationship. If we adopt appellants' interpretation of Section 37A, we would be required to hold that the Legislature meant to change such a distribution to a per capita basis when a disclaimer is executed. There is no such express or implied legislative intent to change the law as it exists under Section 43 of the Probate Code.

As a second assumption, appellants contend that the language of Section 37A stating that "... the *property subject thereof* shall pass as if the person disclaiming had predeceased the decedent...." refers to the entire intestate property of the decedent and not just to the share the disclaimant is entitled to receive under the laws of intestacy. "The property subject thereof", when read in conjunction with the remainder of the statute, refers only to the property over which the disclaimant had authority by inheritance. To give the disclaimant power over the entire estate to change the distribution by making a disclaimer *statement* would permit that person to have the power and authority to legislate and control the distribution of another's estate. In addition to disclaiming for tax purposes, the per stirpes recipients would gain or lose at the whim of the disclaiming heir. All of this is contrary to the legislative intent.

A careful reading of the Texas Probate Code supports an interpretation that by enacting Section 37A, the Legislature intended to affect only to whom a disclaimed share descends, and not the manner in which an entire estate is to be distributed. Section 38 defines to whom an estate passes while Section 43 determines the manner in

which the estate is to be distributed. *Peters v. Clancy*, 192 S.W.2d 937 (Tex.Civ.App. —Galveston 1946, no writ). In Section 38, when defining to whom an estate passed, the Legislature used the language "shall pass." In contrast, when the Legislature defined the manner in which an estate was to be distributed in Section 43, it used the language "shall take" and "shall inherit." It follows that when the Legislature provided that "the property subject thereof *shall pass* as if the person predeceased the decedent," it intended to define to whom the disclaimed portion of the estate descended rather than the manner in which the entire estate would be distributed. See Section 37A. For a similar interpretation, but under a clearer disclaimer statute, see *In Re Estate of Fienga*, 75 Misc.2d 233, 347 N.Y. S.2d 150 (Surrogate's Court, Kings County, New York 1973).

In construing this statute, this Court must consider the consequences of a particular construction. Tex.Rev.Civ.Stat.Ann. art. 5429b–2, § 3.03 (Supp.1980). If this Court were to adopt appellants' interpretation of Section 37A, it would cease to be used primarily as a tax planning tool, but could instead become a tool to manipulate an entire estate. For example, if Amos Welder, Sr., had eight children and his two deceased brothers had only one child each, it would be clearly in his lineal descendents' favor to execute a disclaimer. The effect of such a disclaimer, according to appellants' theory, would be to allow Amos Welder Sr.'s children to take eighty percent of the entire estate and the collateral descendents only ten percent. This would be true even though the disclaimant, Amos Welder, Sr., would have been entitled to only a one-third share of the estate on his own right. It is apparent that this manipulation of an estate was not the intent of the Legislature. *City of Deer Park v. State*, 259 S.W.2d 284 (Tex.Civ.App.—Waco 1953) aff'd, 154 Tex. 174, 275 S.W.2d 77 (1955).

■ We hold that the able trial judge correctly interpreted the mandate of Section 37A of the Probate Code. Appellants'

points of error are overruled. The judgment of the trial court is affirmed.

AFFIRMED.

BISSETT, J., not participating.