**In re James HITE and Harry Burkhart, III.**

**No. 13–85–125–CV.**

Court of Appeals of Texas, Corpus Christi.

Nov. 14, 1985.

Rehearing Denied Dec. 12, 1985.

Rob Ramey, Wharton, for appellant.

Anthony B. Hamilton, Bay City, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This is a will construction case, brought after the will had been probated. Appellant, James Hite, brought this declaratory judgment action requesting that the trial court construe a portion of his wife's will in his favor and declare his oil and gas interests under the will. From an unfavorable ruling the testatrix' husband brings this appeal. We affirm. The dispute arose between appellant and appellee, Harry Burkhart III (the testatrix' son), over the disposition of certain oil and gas interests owned by the testatrix as her separate property.

The parties are both devisees under the will of the testatrix, Elizabeth Cole Hite, who died on June 14, 1975, leaving a will dated August 4, 1964. The portion of the will in dispute is labeled "SIXTH" and states as follows:

I hereby give, devise and bequeath to my said husband, JAMES HITE, for and during his natural life, *an undivided one-half (1/2) of all oil, gas and mineral royalties to which I might be entitled,* he to have the use and benefit of said one-half (1/2) nonparticipating interest in and to said royalties during his natural life, with the remainder to my son, HARRY G. BURKHART, III, in fee, and upon

the death of my said husband, JAMES HITE, the title in fee to said one-half (1/2) interest in said royalties shall pass to and vest in my said son, HARRY G. BURKHART, III. (Emphasis added.)

Additionally, we note that, in the fifteenth section of the will, the testatrix authorized the executor of her estate (the testatrix' son) to execute any oil, gas and mineral leases necessary to properly manage her estate. The seventh section of the will is the residuary clause of which appellee (testatrix' son) is the beneficiary.

The will is of record as is an instrument entitled Stipulations and Pretrial Orders bearing the signatures of the attorneys for the parties and the trial judge. The document states that, as a result of a pretrial conference, the parties agreed and admitted the following:

2. At the time of her death, the testatrix owned undivided mineral interests in several tracts of land. She owned an undivided one-half of approximately 355 acres which was partitioned in 1951 from a 1400 acre tract. The 1951 partition deed granted to the owners of the 355 acres an undivided nonparticipating royalty interest in each of three other tracts. That partition deed also burdened the 355 acres by carving out of the mineral estate a nonparticipating royalty interest in each of the other three tracts.

3. At the time of the testatrix' death, some of the tracts in which she had mineral interest had mineral production and some did not.

4. At the time of the testatrix' death, she was the owner of three recognized oil, gas and mineral interests. The testatrix owned all three of these types of interest as separate property.

5. The testatrix owned a fractional nonparticipating royalty interest in the mineral estate of various tracts of land. This royalty interest was perpetual in that its existence was not restricted to the life of the owner, a term of years or the duration of any specific oil and gas lease. On the date of the execution of the testatrix' Will and on the date of her death, producing leases were in existence which covered mineral interests burdened by the testatrix' nonparticipating royalty interest. The testatrix was receiving and was entitled to receive a share of the royalty pursuant to this interest.

6. The second type of oil, gas and mineral interest which the testatrix owned was an interest in "lessor's royalty," which was being paid pursuant to existing oil and gas leases on fee mineral estates of which the testatrix was part owner. The testatrix was receiving and was entitled to receive royalty from existing and producing leases at the time of her death.

7. The third type of oil, gas and mineral interest which the testatrix owned was an undivided fractional interest in the fee mineral estate with respect to several tracts of land on which no lease existed and from which no production was being obtained at the time of her death. No royalties were being paid with respect to this type of oil and gas interest at the time of testatrix' death.

8. After the testatrix' death, HARRY BURKHART, III, individually and as independent executor of the testatrix' estate, executed an oil, gas and mineral lease which covered production on 160 acres which are a part of the 355 acres which the testatrix owned, along with her son, HARRY BURKHART, III. Production was subsequently obtained under this lease, and a part of the net proceeds of such production are now payable as royalty.

\* \* \* \* \* \*

## IV

Plaintiff and Defendant have agreed to stipulate as to the facts set out [above] and no matters of fact are at issue.

The trial court made nine conclusions of law which, in summary, were:

(1) the testatrix intended in the sixth paragraph of her will to devise to appellant (her husband) only royalty interests pay-

able under oil, gas and mineral leases in existence at the time of her death;

(2) the testatrix did not devise to appellant (her husband) any royalty interest which was created and reserved in an oil and gas lease executed after the death of the testatrix on a mineral estate in which she owned a fractional undivided mineral interest at the time of her death; and

(3) the mineral estate owned by the testatrix which was not subject to an existing oil and gas lease at the time of her death and which was devised to appellee (her son) pursuant to the residuary clause of her will was not burdened with any royalty interest devised to appellant (testatrix' husband) by the sixth paragraph of the will.

In his fourth, fifth, eighth and ninth points of error, appellant contends that, as a matter of law, the language "an undivided one-half (1/2) of all oil, gas and mineral royalties to which *I might be entitled*" (emphasis supplied) is unambiguous and devises to him an undivided one-half interest in any and all royalties generated from any leases on any lands in which the testatrix owned an interest at the time of her death, regardless of whether the leases were in existence at the date of her death or thereafter. We disagree.

 A will is a unilateral instrument, and the courts are concerned only with the intention of the testator as expressed in the will. *Gee v. Read*, 606 S.W.2d 677, 680 (Tex.1980); *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex.1971); *Guilliams v. Koonsman*, 154 Tex. 401, 279 S.W.2d 579, 581 (1955). It is the sense in which the words were used by the testator that is the ultimate criterion. A basic rule of will construction is that the words of a will should be given their plain and usual meaning unless it is clear from the will as a whole that the testator intended a different meaning. *Jensen v. Cunningham*, 596 S.W.2d 266, 271 (Tex.Civ.App.—Corpus Christi 1980, no writ). A will should be construed as to give effect to every relevant provision contained therein. *Gonzalez v. Gonzalez*, 457 S.W.2d 440, 443 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.).

 At first blush, the language of the sixth paragraph does not seem ambiguous; however, circumstances arose (e.g., the subsequent letting of a lease which produced royalties) that were not adequately addressed by this testamentary provision. When applied to these subsequent events, more than one meaning emerges from this language. Where a latent ambiguity exists, the courts can and do authorize the admission of extrinsic evidence regarding the nature and status of the testatrix' property to help in construing a provision in a will. *Mercantile National Bank v. National Cancer Research Foundation*, 488 S.W.2d 605, 608 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.).

Appellant's first, second, third, sixth and seventh points of error urge that the trial court erred as a matter of law in ruling that the sixth paragraph of the will did not devise to him any interest in royalties created pursuant to an oil and gas lease executed after the death of the testatrix. He argues that a royalty interest may be created prior to the execution of any lease. Since the testatrix owned a mineral estate and a potential royalty interest at the time of her death, the sixth paragraph of the will devised to him a royalty interest in leases that were executed after her death. Again, we disagree.

A construction of this will requires consideration of the nature and status of the testatrix' property that she owned at the time of her death. It consisted of: (1) a fractional nonparticipating royalty interest by which she was receiving royalties pursuant to existing leases; (2) a lessor's royalty interest by which she was receiving royalties pursuant to existing leases; and (3) an undivided fractional interest in a fee mineral estate which was not subject to any leases. The subject matter of the dispute in the instant case is the royalties from the fee mineral estate (number three above). These royalties were a result of a lease let after the death of the testatrix. This undivided fee mineral estate passed to appellee (appellant's son) under the residuary clause

of the will. The question for our determination is whether this disputed royalty interest passed to appellant through the sixth paragraph or to appellee, along with the rest of the fee mineral estate, through the residuary clause.

█ Appellant is correct in that a royalty or royalty interest may be created, either by grant or by reservation, prior to the creation of the oil and gas lease. *Watkins v. Slaughter*, 144 Tex. 179, 189 S.W.2d 699, 700 (Tex.1945); *Barker v. Levy*, 507 S.W.2d 613, 617 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). Appellant seems to argue that the language "all oil, gas, and mineral royalties to which I might be entitled" is sufficient to devise a royalty interest in advance of the severance and creation of that interest by an oil and gas lease. While the testatrix certainly could have created such a royalty interest, the words used by her in her will do not manifest an intent to do so.

█ It is well established that a will speaks of the testator's estate as of the time of the testator's death, and it is the estate of the testator then possessed that passes according to the terms of the will. *Shriners' Hospital for Crippled Children of Texas v. Stahl*, 610 S.W.2d 147, 150 (Tex.1980). It has been said that there is no shorter interval of time from when a testator dies and his estate passes to the devisees under his will. Title to an estate vests immediately in the devisees at the very moment of the testator's death, though title to the estate is subject to administration. *Harper v. Swoveland*, 591 S.W.2d 629, 630 (Tex.Civ.App.—Dallas 1979, no writ); TEX.PROB.CODE ANN. Section 37 (Vernon 1980); *see also Welder v. Hitchcock*, 617 S.W.2d 294, 297 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r. e.). Here, at the time of the testatrix' death, she owned an undivided interest in a fee mineral estate which was not burdened with any royalty interests. This fee mineral estate was devised to appellee (her son) in the residuary clause of her will.

The testatrix also owned, at the time of her death, two separate royalty interests under which she was entitled to receive royalty payments pursuant to then-existing leases. This she devised to appellant (her husband) in the sixth paragraph of her will. The law presumes that the testatrix knew the extent of her estate and to what royalties she was entitled.

Appellant argues that the fact that the testatrix empowered the executor of her estate to execute oil and gas leases is evidence that she was aware that new leases could be created in connection with her estate after her death. He urges that this provision, when read together with the sixth paragraph, evidences an intent that appellant receive all future royalties from the estate. This argument is also without merit. The execution of oil and gas leases was a part of the administration of her estate. Such execution only created a royalty interest for the benefit of the devisee of the fee mineral estate, not the testatrix. Her ownership of the fee mineral estate had passed to her son, the appellee, at the time of her death.

█ Appellant also argues that it is erroneous to conclude that the testatrix intended to devise all of her potential royalty interests which were not subject to leases at the date of her death by way of a residuary clause. On the contrary, one of the functions of a residuary clause is to dispose of property that the testator may have overlooked, property that lacked particular definition or property that the testatrix did not know that she was entitled to at the time the will was executed. *Johnson v. Moore*, 223 S.W.2d 325, 329 (Tex.Civ. App.—Austin 1949, writ ref'd).

The sixth paragraph of the will devised to appellant an interest in all the royalties to which the testatrix was entitled at the time of her death. When she died, she was entitled to receive royalties from a nonparticipating royalty interest and a lessor's royalty interest, and these were the interests which vested in appellant at her death. We hold that the trial court properly construed this will as a matter of law. Appel-

lant's first nine points of error are overruled.

In his eleventh point of error, appellant argues that the trial court erred in making its Finding of Fact Number 9 and Amended Finding of Fact Number 1, in which the court stated its determination of the testatrix' intent, because the parties had stipulated to all the facts and the testatrix' intent was not included among the stipulations. He argues that the trial court and this Court are therefore limited to only those facts agreed upon by the parties, citing *Reed v. Valley Savings and Loan Company*, 655 S.W.2d 259, 264 (Tex.App.— Corpus Christi 1983, writ ref'd n.r.e.); TEX.R.CIV.P. 263 (Vernon 1976). Amended Finding of Fact Number 1 states:

> [t]he oil, gas and mineral royalties which [t]estatrix intended to devise to [p]laintiff pursuant to [p]aragraph [s]ixth of the [w]ill consisted only of an existing nonparticipating perpetual royalty interest and the [t]estatrix' share of any royalty payable under any oil, gas and mineral lease in existence at the time of her death.
>
> This amendment to said Findings of Fact is made in order to eliminate the implication that the above findings (sic) of fact constituted part of the stipulations agreed to by the parties. It is a fact found solely by the Court.

This finding is identical to Finding of Fact Number 9 except for the latter paragraph. Clearly, the amended finding is the operative finding on this issue. We note that the trial court made an identical determination of intent labeled Conclusion of Law Number 5.

Resolution of this point turns on whether a determination of the testatrix' intent is an issue of fact or an issue of law. In the instant case, we hold that such a determination was an issue of law. Generally, where a latent ambiguity necessitates the introduction of extrinsic evidence to determine the testator's intent, the issue becomes a mixed question of law and fact which should be submitted to the trier of facts. *Mercantile National Bank v. Na-*tional Cancer Research Foundation*, 488 S.W.2d at 608; *Kelley v. Harsch*, 161 S.W.2d 563, 567 (Tex.Civ.App.—Austin 1942, no writ). However, this general rule is not applicable in this case because the extrinsic evidence admitted was undisputed. Thus, there were no factual matters at issue. It is well established that if there is no ambiguity, the construction of a written instrument is for the court, and, even in those cases of ambiguous instruments, if the extrinsic evidence is undisputed as to the circumstances, the construction is still a question of law for the court. *Brown v. Payne*, 142 Tex. 102, 176 S.W.2d 306, 308 (Tex.1943); *In re Estate of O'Hara*, 549 S.W.2d 233, 238 (Tex.Civ.App.—Dallas 1977, no writ); *see also Taylor v. Baten*, 481 S.W.2d 450, 451 (Tex.Civ.App.—Beaumont 1972, no writ). In this instance, the only issue before the trial court was the application of the law to the admitted facts. It is unnecessary for us to decide whether the stipulations made by the parties technically constituted an agreed case under TEX.R.CIV.P. 263, as appellant argues. Appellant's eleventh point of error is overruled.

We have considered all of appellant's points of error, and they are overruled.

The judgment of the trial court is affirmed.