In the Matter of the ESTATE OF
Robert C. HANAU, Deceased,
Appellant,

v.

Dorris Dunn HANAU, Appellee.

No. 13–85–553–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 26, 1986.

Rehearing Denied Dec. 31, 1986.

Richard D. Davis, Johnson & Davis, Harlingen, Michael J. Cenatiempo, Houston, for appellant.

Randall W. Friebele, Ferrero, Brasch, Friebele & Mardis, Harlingen, for appellee.

Before BENAVIDES, UTTER and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

This is an appeal from a partial summary judgment involving the distribution of property of testator, Robert C. Hanau.

Appellant, testator's son by his first marriage, by two points of error, complains of portions of the summary judgment which characterize certain property acquired by the testator while a resident of Illinois, as community property.

Robert C. Hanau (testator), and Dorris Dunn Hanau (appellee), were married on October 19, 1974, and at the time of their marriage resided in Illinois. On April 30, 1979, the couple moved to Texas, and resided in Cameron County until Robert's death on March 2, 1982.

At death, Robert left a valid will dated May 19, 1980, which contains the following relevant clauses:

I.

I hereby devise and bequeath all of my separate property which consists of Illinois property and the yield from same, and other separate property acquired

since the marriage to my present wife, Dorris Dunn Hanau, to my two children, Steven L. Hanau and Leslie Ann Dubinske, share and share alike, and in the event that either predeceases me then their said shares will go to the then living children of the said Steven L. Hanau and Leslie Ann Dubinske.

### II.

I hereby give, devise, and bequeath unto my wife, Dorris Dunn Hanau, all of the community property which we have acquired since our marriage and in addition to giving her all of our community property I also give to her my earned survivor pension, social security benefits; Donnelly Group Life Insurance benefits and the truck and boat in my name.

### III.

I hereby name, constitute, and appoint my wife, Dorris Dunn Hanau, Independent Executrix without bond of my Estate and direct that no action be had in the Probate Court other than the probate and recording of this WILL and the return of statutory inventory, appraisement, and list of cliams (sic) of my estate. And in the event that we die in the same accident or common disaster or the survivor dies within 30 days of said common accident or disaster, then my undivided one-half (½) of our community property shall go to my children as above provided for.

The parties stipulated that stocks and securities acquired by the testator prior to his marriage to appellee were testator's separate property, and that the stocks and securities acquired after moving to Texas were the couple's community property. The characterization of stocks and securities (including mutual fund accounts), acquired by testator between the date of his marriage to appellee and the date the Hanaus moved from Illinois to Texas, was left to the trial court's determination.

The parties also specifically stipulated that after marriage, testator and appellee continued to maintain their respective stock, bond and mutual fund accounts in their own names. During all times pertinent to this lawsuit, all transactions in testator's account were from his income and all transactions in appellee's account were from her income.

During his marriage and domicile in Illinois, testator's account acquired 15 additional securities (from 2/76–3/79), and several shares in mutual funds. In addition, testator's account contained 200 shares of TransWorld cumulative preferred stock. The parties' agreed stipulation traces the history of testator's mutual funds acquisitions and the acquisition of his TransWorld stocks. The trial court held that: (1) all securities (stocks and mutual funds) acquired prior to marriage were testator's separate property and passed to his children, and (2) those securities acquired during his marriage to appellee, while domiciled in both Illinois and Texas, are community property and passed to appellee under Paragraph 2 of the will. This included an award of the TransWorld stock to appellee.

Appellant argues that the securities acquired by testator with his separate funds, while domiciled in Illinois, were intended to be included in the bequest to his children under Paragraph I of his will, and should therefore pass as testator's separate property to his children.

As evidenced by the court's opinion letter, the trial court based its decision on Tex.Fam.Code Ann. § 3.63 (Vernon 1975) and the Supreme Court's decision in *Cameron v. Cameron*, 641 S.W.2d 210 (Tex. 1982).

The trial court stated in its opinion letter that:

This Court finds it difficult to believe that the Texas Supreme Court would intend to grant greater rights in marital property to a divorcing spouse than to a spouse who was willing to suffer through a lifetime of marriage rather than divorce.

Family Code § 3.63 specifically addresses the manner in which a court shall divide property "in a decree of divorce or annul-

ment." Both appellant and appellee refer to the 1981 legislative amendment to § 3.63 which allowed for the equitable division of property in a *divorce proceeding.* Section 3.63 is inapplicable in this case, for it specifically applies to division of property upon divorce or annulment, and not to probate proceedings.

Appellee agrees with appellant that, prior to *Cameron,* property acquired by a spouse while residing in a common law state, (in this case, Illinois), would have remained the separate property of the acquiring spouse upon the dissolution of the marital relationship. Appellee notes in her brief that "this is true regardless of whether the dissolution of the marriage was a result of divorce or the death of one of the spouses."

■ It is well settled that property acquired by a spouse while domiciled in a common law state retains the character of ownership it had at the time of acquisition. As noted in *Parson v. United States,* 460 F.2d 228, 233 (5th Cir.1972), under Texas law, property acquired by a husband and wife in another state prior to their moving to Texas will retain the character of ownership it had in the state from which it was removed, citing *McClain v. Holder,* 279 S.W.2d 105, 107 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.). *See Oliver v. Robertson,* 41 Tex. 422, 425 (1874); *Griffin v. McKinney,* 25 Tex.Civ.App. 432, 62 S.W. 78, 81 (1901, no writ). Appellee claims that *Cameron* operates to reclassify the separate, pre-Texas acquired property into community property in a probate case. Appellee argues that this reclassification operates in such a way that "separate" property devised under Paragraph I of the will changes to community property, so that appellee would recover the property under Paragraph II rather than appellant under Paragraph I of the will.

■ Here, the parties stipulated that at all times, the testator and appellee maintained their respective stock, bond and mutual funds in their own names, in their own accounts, with all transactions being performed with their own income. We find

that the securities acquired by testator, while married and living in Illinois and before moving to Texas, were erroneously reclassified by the trial court as community property, and are separate properties which pass to his children under Paragraph I of his will. In so holding, we reject appellee's argument that *Cameron* requires such property to be treated as community property passing under Paragraph II.

In *Cameron,* the Court stated:

[W]e recognize that property acquired in common law jurisdictions has historically been termed 'separate' property, but we hold that the property spouses acquire during marriage, except by gift, devise or descent should be divided upon divorce in Texas in the same manner as community property ...

\* \* \* \* \* \*

In adopting Tex.Fam.Code Ann. § 3.63(b) as the substantive law of the state, we continue the national trend endorsing the use of marital property as the means of settling the equities between *divorcing* spouses. [emphasis ours].

*Cameron v. Cameron,* 641 S.W.2d at 220, 223.

The comparison of the jurisdictional differences in the treatment of separate property in the common law states in the *Cameron* opinion were comparisons of the treatment, laws and equities in divorce cases. Texas Family Code § 3.63(b) addresses itself to the division of property in divorce or annulment proceedings.

There is no consideration reflected in *Cameron* of a "Family Allowance," "Homestead Right," and other provisions of the Texas Probate Code and/or the laws of the common law states with respect to their treatment of "separate" property in the context of a probate case.

We need not, however, rely on a finding that *Cameron* should not achieve the result argued by appellee, nor that *Cameron* should not be extended to a Texas probate case. As recently as 1985 this Court reit-

erated the following established rules relating to a will as follows:

> It is well established that a will speaks of the testator's estate as of the time of the testator's death, and it is the estate of the testator then possessed that passes according to the terms of the will. *Shriners' Hospital for Crippled Children of Texas v. Stahl,* 610 S.W.2d 147, 150 (Tex.1980). It has been said that there is no shorter interval of time from when a testator dies and his estate passes to the devisees under his will. Title to an estate vests immediately in the devisees at the very moment of the testator's death, though title to the estate is subject to administration. *Harper v. Swoveland,* 591 S.W.2d 629, 630 (Tex.Civ.App. —Dallas 1979, no writ); Tex.Prob.Code Ann. Section 37 (Vernon 1980); *see also Welder v. Hitchcock,* 617 S.W.2d 294, 297 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

*In Re Hite,* 700 S.W.2d 713, 717 (Tex.App. —Corpus Christi 1985, writ re'f n.r.e.).

Robert Hanau's will was written May 19, 1980, and he died March 2, 1982. *Cameron* was decided November 17, 1982. We hold that property acquired before the Hanaus moved to Texas which was Mr. Hanau's separate property passed according to his will to appellant before *Cameron* was decided. This does not involve retroactivity because title had already passed according to the terms of the will at the moment of Mr. Hanau's death.

The effect of the trial court's ruling in reclassifying the Illinois, separate property acquired after marriage into community property would be to change the will of the testator against well established Texas law and to change the testator's bequest in total, so that none of the disputed property acquired in Illinois would pass to appellants as intended by the testator at the time he made his will.

▪ The trial court's letter opinion invokes principles of equity *sua sponte.* There were no pleadings invoking equity. Additionally, a court may not invoke equity to change the terms of a will. *Huffman v. Huffman,* 339 S.W.2d 885 (Tex.1960).

With regard to the 200 shares of Trans-World stock, Paragraph XII of the Agreement to Stipulate Testimony provided as follows:

> The parties agree and stipulate that the following transactions took place in the stock brokerage account standing in the name of Robert C. Hanau.
>
> A. On date of marriage, there were 200 shares of Texaco in the account.
>
> B. On July 1, 1977, while living in Illinois, 200 shares of Texaco were sold for $5,755.00 and 200 shares of City Investing Cumulative Preferred were purchased for $5,634.00.
>
> C. On September 20, 1979, four months after moving to Texas, the shares of City Investing Cumulative Preferred were sold for $6,021.00 and 200 shares of TransWorld Cu. Pfd. stock were purchased for $6,170.00. $149.00 in cash was needed to complete this purchase.
>
> The parties *DO NOT* stipulate as to whether these TransWorld shares are community or separate property and ask the Court to decide this question.

▪ We agree with the trial court's characterization of these stock shares as community property. Although the parties stipulated that the testator and appellee retained their funds and securities in separate accounts, when tracing separate property, it is not enough to show that separate funds *could have been* the source of a subsequent deposit of funds. *Latham v. Allison,* 560 S.W.2d 481, 485 (Tex.Civ.App. —Fort Worth 1978, writ ref'd n.r.e.). Such conjecture, as noted in *Allison,* does not constitute sufficient evidence to sustain appellant's burden of tracing to overcome the community property presumption of Tex. Fam.Code Ann. § 5.02 (Vernon 1975). Appellant failed to meet his burden in this regard; we therefore uphold the trial court's characterization of the TransWorld stock as community property to pass under testator's will by Paragraph II.

That part of the trial court's judgment awarding appellee the securities acquired in Illinois by the testator after marriage to appellee, but before moving to Texas, is REVERSED and judgment is RENDERED that such securities are to be distributed under Paragraph I of the will. The remainder of the judgment is AFFIRMED.